431 A.2d 1088

**COMMONWEALTH of Pennsylvania,**

v.

**Martin SCHILLING, Appellant.**

Superior Court of Pennsylvania.

Argued March 6, 1980.

Filed June 12, 1981.

Petition for Allowance of Appeal Granted Dec. 23, 1981.

362

Kent D. Mikus, Lancaster, for appellant.

Richard H. Horn, Assistant District Attorney, York, submitted a brief on behalf of Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

This is an appeal from the judgment of sentence by a judge and jury on the charges of unlawful restraint,[1] rape,[2] involuntary deviate sexual intercourse,[3] indecent assault,[4] and a violation of the Uniform Firearms Act.[5] After being sentenced to 3½ to 7 years each on the rape and involuntary deviate sexual intercourse charges, such sentences to run concurrently, Mr. Schilling received a suspended sentence on the remaining convictions. This appeal follows.

On appeal Mr. Schilling attacks several of his convictions on three theories: (1) he contends that his conviction under the Uniform Firearms Act for committing a crime with a firearm was improper because the gun in question did not meet the statutory definition of a "firearm;" (2) he contends that he was improperly convicted of "unlawful restraint" because he did not expose the victim to an actual danger of

1. Crimes Code, 18 Pa.C.S. § 2902 (1980).

2. *Id.* at § 3121 (1973).

3. *Id.* at § 3123.

4. *Id.* at § 3126 (1980).

5. *Id.* at § 6103 (1973). (commission of a crime with a firearm).

"serious bodily injury;" and (3) he contends that his convictions for the three sex crimes were improper because the Commonwealth failed to adequately prove the absence of a spousal relationship between Mr. Schilling and the victim. Finding Mr. Schilling's first and second contentions persuasive, we vacate his convictions for unlawful restraint and for committing a crime with a firearm, but affirm his other convictions concerning rape and involuntary deviate sexual intercourse because we find his final contention to be without merit.

On the evening of August 3, 1977, Mr. Schilling and the prosecutrix, whom he met only three days before, went out on a date in Mr. Schilling's car. During the course of the evening appellant Schilling drove to a rural area and parked. The two talked for about half of an hour and thereafter engaged in petting and kissing. The prosecutrix asked to be taken home, but Mr. Schilling continued in an attempt to seduce her. The prosecutrix then insisted on going home, but Mr. Schilling responded by asking her if she would have intercourse with him. In an attempt to discourage his romantic advances, she told him that she was menstruating, Mr. Schilling, however, simply changed his request to one for oral intercourse. He suddenly pulled out a pistol from the glove compartment of his car and placed it to the prosecutrix's left temple. Out of fear for her life, she agreed to comply with anything Mr. Schilling requested. After the gun was placed in the back seat, the act of oral intercourse was consummated whereupon Mr. Schilling became remorseful and asked her to forgive him. Subsequently, Mr. Schilling put the gun into a holster in a compartment in front of the car and informed the prosecutrix that it was only a pellet gun. Testimony at trial indicated that the instrument in question was, in fact, a pellet gun operable on $CO_2$ cartridges. This type of gun is also referred to as an "air pistol."

Appellant Schilling's first assignment of error concerns his conviction under the Uniform Firearms Act for committing a crime with a firearm. The basis of this contention is that the lower court erred in ruling as a matter

of law that the gun used by the defendant was a "firearm" under the Act. We find this contention to be persuasive and hold that a pellet or "B–B" gun is not contemplated as a "firearm" under the Uniform Firearms Act.[6] In *Commonwealth v. Lowary*, 463 Pa. 408, 345 A.2d 170 (1978) the Supreme Court of this Commonwealth specifically found that a spring-activated pellet gun was not a "firearm" under the Uniform Firearms Act. As the trial court, in its opinion, correctly points out, the act was amended effective after the pertinent date in the *Lowary* case so as to provide a definition of the term "firearm." *See* 18 Pa.C.S. § 6102.[7] The definition promulgated in this statutory amendment deals solely in terms of the barrel-length of the weapon in question.[8] *Id.* Nevertheless, contrary to the decision of the trial court, we are of the opinion that the efficacy of *Lowary* was not obviated by the intervening amendment concerning barrel-length. Rather, we hold that the *Lowary* common usage definition of the term "firearm" is generally applicable except that it is qualified by the length limitations specified in the statute. This is the only reasonable interpretation[9] of the statute for it would be absurd to hold that a "cap gun" or "water pistol" was intended to fall within the definition of a "firearm" simple by virtue of the fact that the length of the barrel on these children's toys is less than twelve inches.

**6.** Because of this holding, we need not address appellant's related contention that the Commonwealth failed to prove that the gun had a barrel-length of less than 12 inches to meet the length limitations in the statutory definition of a "firearm." *See* notes 7 & 8 and accompanying text, *infra.*

**7.** It should be noted that the amendment was passed prior to the *Lowary* decision and, therefore, a cause and effect relationship between this decision and the legislative enactment may not be established.

**8.** The Act defines a "firearm" as "[a]ny pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, or any rifle with a barrel less than 15 inches." 18 Pa.C.S. § 6102.

**9.** *See* 1 Pa.C.S. § 1922(1) (statutory presumption that legislature "does not intend a result that is absurd, impossible of execution or unreasonable").

The issue, therefore, becomes whether or not the specific $CO_2$ operated B–B gun used in the instant case is a "firearm" as defined in the *Lowary* common usage sense. The B/B gun used in the *Lowary* case was a spring-activated one which the court held did not fall within the meaning of the term "firearm" as it is commonly used. However, the Supreme Court expressly left open the question of whether or not guns operable by other means may be considered "firearms" under the act:

> [T]he definition of firearm may not be necessarily limited to those weapons from which a shot is dispersed by gunpowder alone. Weapons using some propellant other than gunpowder might also be properly classified as a firearm. Those activated by mechanical means such as springs, however, are not firearms within the statute.

*Commonwealth v. Lowary*, 463 Pa. at 411, 345 A.2d at 171. Being mindful of this language, we nevertheless find that the $CO_2$ B–B gun does not fall within the common and approved usage of the term "firearm." Rather, this type of B–B gun is more like a spring-type B–B gun than an actual "firearm" as that term is commonly used and understood.

This conclusion is supported when the other sections of Title 18 are read in *pari materia*[10] with the Uniform Firearms Act. In this regard, we observe that "the Legislature has explicitly recognized that a B–B gun is not a firearm." *Commonwealth v. Lowary*, 226 Pa.Super. 115, 117, 313 A.2d 317, 318 (1973) (Spaeth, J., opinion in support of reversal). That is, 18 Pa.C.S. § 6304, pertaining to the sale and use of "air rifles" defines this term as: "any air gun, *air pistol, spring gun*, spring pistol, *B–B gun*, or any implement *that is not a firearm*, which impels a bullet of any kind with a force that can reasonably be expected to cause bodily harm." (emphasis added). Thus, the Legislature provided that "B–B guns," "air pistols" and "spring guns", are not "firearms." In addition, the entire section on "air rifles" sets out

---

**10.** *See* 1 Pa.C.S. § 1932 (statutes or parts of statutes relating to the same things or class of things are in pari materia, and are, therefore, construed together as one statute if possible).

rules and regulations for their sale, transfer, use, discharge and possession. 18 Pa.C.S. § 6304. This is another indication that a B–B gun or air pistol is not a "firearm" because the sections of the Uniform Firearms Act dealing with the carrying of firearms without a license, 18 Pa.C.S. § 6106, the requirement that former convicts are not allowed to own firearms, 18 Pa.C.S. § 6105, the persons to whom delivery of a firearm shall not be made, 18 Pa.C.S. § 6110, the sale of firearms, 18 Pa.C.S. § 6111, and the requirement that retail dealers be licensed, 18 Pa.C.S. §§ 6112, 6113, would otherwise overlap and contradict the previously mentioned rules and restrictions of 18 Pa.C.S. § 6304. Surely, this is not what the Legislature intended.

Since a $CO_2$ operated pellet gun is not a "firearm" under the Uniform Firearms Act, we conclude that appellant Schilling was erroneously convicted for committing a crime with a firearm in violation of 18 Pa.C.S. § 6103. We, therefore, reverse his conviction for this offense.

■ The second contention made by the defendant is that he was improperly convicted of "unlawful restraint" because he never exposed the prosecutrix to serious bodily injury. As appellant Schilling correctly points out, the Crimes Code section with which he was charged clearly requires a showing of this element:

§ 2902. Unlawful restraint

A person commits a misdemeanor of the first degree if he knowingly:

(1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury;

18 Pa.C.S. § 2902(1).

In addition, it is crucial to note that Mr. Schilling was not charged with subsection two of this crime which is committed when the accused knowingly "(2) holds another in a condition of involuntary servitude." *Id.* at § 2902(2). Clearly, subsection one requires the Commonwealth to prove as part of its prima facie case that the defendants put another in actual danger of serious bodily injury. *See, e. g., Com-*

monwealth v. *Trowbridge*, 261 Pa.Superior 109, 395 A.2d 1337 (1978). Subsection two, however, has no such requirement, but instead requires proof of a condition of involuntary servitude.

In *Trowbridge*, this Court noted that with respect to the crime of recklessly endangering another person that mere apparent ability to inflict harm is not enough to support a conviction for this crime. It was held that an actual danger of harm must be shown. Although *Trowbridge* did not deal with the same crime we have here, it is important with respect to the fact that the Commonwealth had to prove an actual danger of serious bodily injury with regard to the pointing of an *air rifle*. In *Trowbridge* we held that the Commonwealth must prove either that the gun was loaded or that the surrounding circumstances were inherently dangerous in order to sufficiently show an actual danger of serious bodily injury. As was the case in *Trowbridge*, the Commonwealth here has not proven that the gun was loaded. Quite to the contrary, appellant Schilling testified that the gun was not loaded. Moreover, we cannot say that the circumstances surrounding Mr. Schilling's actions were so inherently dangerous that he nevertheless exposed the prosecutrix to an actual danger of serious bodily injury despite the fact that the gun was unloaded. Thus, the evidence was not sufficient to support a conviction under the subsection of unlawful restraint with which Mr. Schilling was charged. *See* 18 Pa.C.S. § 2902(1).

Perhaps this explains why the Commonwealth has argued the sufficiency of the evidence to convict Mr. Schilling under 18 Pa.C.S. § 2902(2). Regardless of whether or not this was in fact the case, it is well-settled law that a defendant can only be convicted of crimes with which he was charged in the indictment or information, or lesser-included offenses of those crimes. *Commonwealth v. Ackerman*, 239 Pa.Super. 187, 361 A.2d 746 (1976); 41 Am.Jur.2d *Indictments and Informations*, § 312 (1978). Since Mr. Schilling was not charged with unlawful restraint under section 2902(2), the Commonwealth's arguments as to a

violation of this section are irrelevant. Therefore, appellant Schilling's conviction for unlawful restraint must be reversed due to the Commonwealth's failure to prove that the prosecutrix was exposed to an actual danger of serious bodily injury as required under 18 Pa.C.S. § 2902(1).

Appellant's third contention is that the Commonwealth failed to establish that he and the prosecutrix were not married at the time of this incident.[11] It was essential for the Commonwealth to establish this fact because the offenses of rape, involuntary deviate sexual intercourse and indecent assault all require proof of a non-spousal relationship.[12] The record indicates that the prosecutrix was single at the time of trial, that she had met the appellant just four days prior to the incident, that she did not see the appellant between the time of their first meeting and the incident in question, and finally, that both lived at home with their parents. This circumstantial evidence is sufficient to rebut any frivolous attempt by the appellant to now claim that he was married to the prosecutrix at the time of the incident.[13]

Finally, we note that the judgments of sentence for rape, involuntary deviate sexual intercourse and indecent assault all arose out of the same singular act of oral intercourse. This is readily apparent from the indictments as well as from the lower court's instructions to the jury on these three offenses. In fact, after charging the jury that

11. Although the Commonwealth argues that this issue is waived as not having been raised in the lower court, we note that the appellant's post-verdict motions clearly preserved the issue concerning the sufficiency of the evidence to support his convictions.

12. This requirement is contained in 18 Pa.C.S. §§ 3121 for the offense of rape, 3126 for the offense of indecent assault, and 3123, when read in conjunction with 3101, for the offense of involuntary deviate sexual intercourse.

13. It is by now axiomatic that a conviction may properly rest upon circumstantial evidence alone. *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979); *Commonwealth v. Hoskins*, 485 Pa. 542, 403 A.2d 521 (1979); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978).

the crime of rape includes the act of oral intercourse,[14] the lower court read the statutory definition of involuntary deviate sexual intercourse and stated:

And there again those are the *same elements*, ladies and gentlemen, *that you have in the rape*. There has to be the deviate sexual intercourse and incidentally, deviate sexual intercourse under the Act is intercourse by os or by oral sex or anus whereby the man's penis enters into the woman's mouth but there has to be this threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, *so that really for all practical purposes in this case, the charge of rape and the charge of involuntary deviate sexual intercourse are one in the same.* (emphasis added).

Additionally, with respect to the charge of indecent assault, the trial court again gave an instruction concerning the sole act of oral intercourse:

[I]n order to constitute an indecent contact it must have been against the consent or the will of this girl and there has to be a touching of the sexual organs or intimate parts of the other person for the purpose of arousing or gratifying sexual desire in the person. And as you recall both parties in the case testified of course, that the sexual organ of the Defendant, his penis, entered the mouth of Complainant. So, the question there, of course, is that still of the essential element of the purpose of arousing

**14.** The Crimes Code specifically defines the terms "sexual intercourse" as used in the rape section, "deviate sexual intercourse" as used in the involuntary deviate sexual intercourse section, and "indecent contact" as used in the indecent assault section:

"Deviate sexual intercourse." Sexual intercourse per os or per anus between human beings who are not husband and wife, and any form of sexual intercourse with an animal.

"Indecent contact." Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person.

"Sexual intercourse." In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required.

18 Pa.C.S. § 3101. Thus, it is readily apparent that the act of oral intercourse falls within the definition of all three of these terms.

sexual gratification of the other party and it had to be without consent.

Our cases have held that an individual can be punished only once for a single act which causes only one injury to the Commonwealth. *See Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976). *See also Commonwealth v. Reynolds*, 256 Pa.Super. 259, 389 A.2d 1113 (1978); *Commonwealth v. Horne*, 247 Pa.Super. 34, 371 A.2d 1024 (1977). In the instant case the sole act of oral intercourse under threat of force constitutes a single offense against the peace and dignity of the Commonwealth. We, therefore, conclude that the duplicitous sentences imposed upon appellant's three convictions for the same act of coerced oral intercourse were illegal.[15]

For all of the foregoing reasons, the appellant's convictions for unlawful restraint and for committing a crime with a firearm are reversed. The convictions for rape, involuntary deviate sexual intercourse, and indecent assault are affirmed. However, the judgments of sentence on these convictions are vacated, and the case is remanded to the lower court for resentencing solely on the conviction for involuntary deviate sexual intercourse.[16]

**15.** It should be noted that the imposition of such sentences are beyond the power and jurisdiction of the sentencing court and, therefore, can be considered despite our normal rules concerning waiver and sua sponte review. *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976); *Commonwealth v. Usher*, 246 Pa.Super. 602, 371 A.2d 995 (1977). *See also Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174 (1978); *Commonwealth v. Jellots*, 262 Pa.Super. 17, 396 A.2d 461 (1978).

**16.** This case should be remanded for resentencing on the most serious of the three offenses. *See Commonwealth v. Lezinsky*, 264 Pa.Super. 476, 400 A.2d 184 (1979); *Commonwealth v. Bailey*, 250 Pa.Super. 402, 378 A.2d 998 (1977); *Commonwealth v. Bryant*, 247 Pa.Super. 460, 372 A.2d 917 (1977) (Hoffman, J., concurring and dissenting); *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972). However, both rape and involuntary deviate sexual intercourse are felonies of the first degree and as such are subject to the same disposition. *See* 18 Pa.C.S. §§ 3121, 3123, 1103. Because involuntary deviate sexual intercourse is the crime with which we usually associate an act of forcible oral intercourse, we conclude that

it is the offense upon which the sentence should be imposed in the instant case.