J-S75006-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MARQUISE WAKEFIELD, | |
| Appellant | No. 68 EDA 2016 |

Appeal from the Judgment of Sentence November 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013650-2013
CP-51-CR-0013651-2013
CP-51-CR-0013652-2013

BEFORE:  BOWES, MOULTON AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 04, 2017**

Marquise Wakefield appeals from the judgment of sentence of an aggregate term of ten to twenty years imprisonment which was imposed following a bench trial wherein he was found guilty of attempted sexual assault, two counts of robbery, burglary, criminal trespass, unlawful restraint, false imprisonment, three counts of simple assault, two counts of theft, two counts of receiving stolen property, three counts of terroristic threats, two counts of possession of an instrument of crime, and recklessly endangering another person ("REAP") arising from two criminal episodes. We reverse Appellant's convictions in part, but affirm the judgment of sentence in all other respects.

Shortly before 2 p.m., on September 8, 2013, Appellant approached Alexandra Houlihan. Ms. Houlihan was preparing for a run outside her house in Philadelphia. Appellant asked to borrow Ms. Houlihan's mobile phone to call for a ride. Ms. Houlihan obliged Appellant's request. After placing two phone calls, Appellant began to walk away with the phone. Ms. Houlihan followed Appellant and demanded that he return it to her. Appellant lifted his shirt to reveal a handgun and threatened to harm Ms. Houlihan if she did not turn away. Rather than turning away, Ms. Houlihan offered Appellant money in exchange for the phone. Appellant agreed.

Ms. Houlihan returned to her home to retrieve some cash. Despite Ms. Houlihan telling him to wait outside, Appellant followed her into her house and then into her bedroom. Once in the bedroom, Appellant shut the door and stood between Ms. Houlihan and the exit. As Ms. Houlihan attempted to retrieve money from her handbag, Appellant informed her that he was going to have sex with her. Ms. Houlihan tried to dissuade Appellant and warned him that her roommate was home and that she would discover him. Nevertheless, Appellant proceeded to unbuckle his pants and threatened to harm Ms. Houlihan if she did not remain quiet. Appellant touched Ms. Houlihan's arm causing her to fall onto her bed. She immediately stood up and continued to urge Appellant to leave her alone. Appellant then heard Ms. Houlihan's roommate descending the staircase outside her bedroom

door.  Upon hearing Ms. Houlihan's roommate, Appellant buckled his pants and fled with the money, but left the cellular telephone in the room.

Less than one-half hour later at a bus stop in the vicinity of Ms. Houlihan's residence, Appellant confronted Marcell Bellinger and Rebecca Hale.  Appellant asked the couple for change, but they declined.  Mr. Bellinger then attempted to make a call using his cellular phone.  Appellant removed a firearm and pointed it at Mr. Bellinger's face.  He demanded money and the phone.  Mr. Bellinger responded to Appellant's threat by explaining that Appellant would have to shoot him to obtain the items.  After a short standoff, Appellant replaced his weapon and walked away.

As a result of the description of their assailant provided by Ms. Houlihan and Mr. Bellinger, police apprehended Appellant in an apartment complex nearby the location of each incident.  Officers seized a black, unloaded BB gun, made to look identical to a real firearm, from Appellant's waistband.  The police also escorted Ms. Houlihan, Ms. Hale, and Mr. Bellinger to Appellant's location, where they positively identified him as their assailant.

Based on the foregoing, Appellant was charged at three separate docket numbers for a litany of offenses related to his altercations with Ms. Houlihan, Mr. Bellinger, and Ms. Hale.  Following a bench trial, the court found Appellant guilty of the aforementioned crimes and, after a sentencing hearing, imposed a sentence of ten to twenty years incarceration.  Appellant

filed a timely notice of appeal and complied with the court's order to file a Rule 1925(b) statement of errors complained of on appeal. The court then authored its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant raises three issues for our consideration:

1. Was not [Appellant] erroneously convicted of unlawful restraint as there was insufficient evidence that he exposed the complainant Alexandra Houlihan to actual risk of serious bodily injury?

2. Was not [Appellant] erroneously convicted of recklessly endangering another person as there was insufficient evidence that he placed the complainant Marcell Bellinger in danger of death or serious bodily injury?

3. Was not [Appellant] erroneously convicted of theft and receiving stolen property as there was no evidence that he took or received any property from the complainant Marcell Bellinger?

Appellant's brief at 3.

As each of Appellant's claimed errors presents a challenge to the sufficiency of the evidence, we set forth our standard of review at the outset. In evaluating a sufficiency challenge, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Smith*, 146 A.3d 257, 261 (Pa.Super. 2016). Moreover, "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt." *Id*. (citation omitted). However, the Commonwealth may sustain its burden by

means of wholly circumstantial evidence. *Id*. In addition, "this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." *Id*. Finally, "the finder of fact is free to believe some, all, or none of the evidence presented." *Id*. at 262.

First, Appellant argues the Commonwealth failed to present sufficient evidence to establish that he unlawfully restrained Ms. Houlihan. In order to maintain a conviction for unlawful restraint, the Commonwealth must prove that the person knowingly:

(1) restrained another person unlawfully in circumstances exposing that person to the risk of serious bodily injury; or

(2) holds another in a condition of involuntary servitude.

18 Pa.C.S. § 2902(a). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Appellant contends that a conviction under § 2902(a)(1), for which he was charged and convicted, requires proof of actual, rather than merely apparent, harm. He maintains that since the BB gun was unloaded, it did not pose a risk of actual harm.

In support of his position, Appellant relies on *Commonwealth v. Schilling*, 431 A.2d 1088 (Pa.Super. 1981). In *Schilling*, the defendant, Schilling, while on a date with the victim, compelled her to perform oral sex

by placing a pistol against her head. Out of fear, the victim complied. After the act was completed, Schilling informed the victim that the weapon was an air pistol. Based on these facts, the defendant was convicted of, *inter alia*, unlawful restraint. On appeal, Schilling argued, in part, that the Commonwealth had failed to establish that he unlawfully restrained the victim since she was not exposed to an actual danger of serious bodily injury.

In reversing Schilling's conviction for unlawful restraint, this Court noted that he was charged and convicted under subsection (a)(1) of the relevant statute as opposed to subsection (a)(2), which relates to involuntary servitude. We observed that subsection (a)(1) required the Commonwealth "to prove as part of its *prima facie* case that the [defendant] put another in actual danger of serious bodily injury." ***Id***. at 1091-1092. We analogized the facts to our holding in ***Commonwealth v. Trowbridge***, 395 A.2d 1337 (Pa.Super. 1978), wherein we found that evidence of an apparent ability to inflict harm was insufficient to support a conviction for REAP. We held that, with regards to an air rifle, the Commonwealth must prove "either that the gun was loaded or that the surrounding circumstances were inherently dangerous in order to sufficiently show an actual danger of serious bodily injury." ***Schilling***, ***supra***, at 1092. Having determined that the Commonwealth failed to prove the air gun was loaded and that the circumstances surrounding the crime were not so inherently dangerous as to

constitute an actual danger or serious bodily harm, we reversed Schilling's conviction for unlawful restraint. ***Compare Commonwealth v. Melvin***, 572 A.2d 773 (Pa.Super. 1990) (defendant's possession and use of an unloaded sawed-off shotgun to force the victim to drive in search of a third party was sufficient proof of inherently dangerous circumstances to support unlawful restraint conviction).

Essentially, the Commonwealth concedes it did not present sufficient evidence to convict Appellant under 18 Pa.C.S. § 2902(a)(1). Nevertheless, it counters Appellant's argument by contending that the evidence was sufficient to convict Appellant for unlawful restraint under subsection (a)(2). It asserts that the fact Appellant was not charged under subsection (a)(2) is inconsequential since the conduct described in the information supported either offense. It cites to ***Commonwealth v. Lohr***, 468 A.2d 1375 (Pa. 1983), for the proposition that, where the information names one crime but describes elements of another, the defendant is charged with both crimes. The Commonwealth argues that the evidence is sufficient to support the finding that Appellant held Ms. Houlihan in a condition of involuntary servitude, and since the information described such conduct, Appellant would not be prejudiced by a modification of his judgment of sentence to reflect the appropriate offense.

Initially, we find that ***Lohr***, ***supra***, does not control our disposition. In ***Lohr***, the defendant was charged with rape, but convicted of statutory rape.

He argued trial counsel was ineffective for failing to object to the variance between the crime he was charged for (rape) and the crime for which he was ultimately convicted (statutory rape). We reasoned that the conduct charged under the rubric of rape did not foreclose the Commonwealth from producing evidence of statutory rape at trial since evidence of the conduct necessary to establish rape of a thirteen-year-old girl would also establish statutory rape. Thus, we found that no such variance existed.

Herein, Appellant challenges the sufficiency of the evidence adduced at trial for unlawful restraint under 18 Pa.C.S. § 2902(a)(1). Appellant's information specifically listed this charge, but not a charge under § 2902(a)(2). The court found him guilty under subsection (a)(1). Appellant is not arguing that there was a prejudicial variance between the crime charged and the crime for which he was convicted, as was the case in *Lohr*. Rather, he is assailing the sufficiency of the evidence for the crime for which he was charged and convicted, *i.e.* unlawful restraint pursuant to 18 Pa.C.S. § 2902(a)(1).[1] Hence, *Lohr* is inapposite to this matter.

We are constrained to find that *Schilling*, *supra*, rather than *Melvin*, *supra*, is controlling. As in *Schilling*, Appellant employed an unloaded BB

---

[1] We observe that unlawful restraint as defined by 18 Pa.C.S. § 2902(a)(2) is not a lesser-included offense of unlawful restraint as defined by 18 Pa.C.S. § 2902(a)(1), but rather, an alternative grounds by which to convict an individual of unlawful restraint.

gun in order to threaten Ms. Houlihan. Appellant's mere possession of an unloaded BB gun did not present a direct risk of serious bodily injury to her. Furthermore, in **Schilling**, we found that the actual consummation of the sexual act under duress nevertheless was insufficient to establish that the surrounding circumstances created an actual risk of serious bodily injury. Herein, Appellant never removed the BB gun from his waistband and exited Ms. Houlihan's residence without a violent incident or sexual contact. Hence, even when viewing the evidence in the light most favorable to the Commonwealth, the evidence is not sufficient to prove beyond a reasonable doubt that Ms. Houlihan was "in actual danger of serious bodily injury" or that the surrounding conditions were inherently dangerous. **Schilling**, **supra**; **Melvin**, **supra**. Thus, we vacate Appellant's conviction for unlawful restraint.

In his second issue, Appellant asserts that there was insufficient evidence to convict him of REAP as to Mr. Bellinger and Ms. Hale. A person recklessly endangers another "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. To sustain a conviction for REAP, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." **Commonwealth v. Cianci**, 130 A.3d 780, 782 (Pa.Super. 2015); **Trowbridge**, **supra** at 1340.

However, [i]t is not [the defendant himself] that must be [shown] to have the present ability to cause death or serious bodily injury to another, it is [the defendant's] actions." *Commonwealth v. Vogelsong*, 90 A.3d 717, 721 (Pa.Super. 2014). Indeed, the Commonwealth "need only establish that the defendant's conduct placed or may have placed another in danger of serious bodily injury or death." *Id*.

The trial court reasoned that pointing an unloaded weapon at a person may lead others to retaliate. It noted that Mr. Bellinger and Ms. Hale were on a busy roadway when Appellant accosted them. The court found that the prolonged encounter between Appellant and Mr. Bellinger could have been witnessed by other pedestrians or motorists who, in turn, could have employed an actual firearm in the couple's defense. Such a scenario would place Mr. Bellinger and Ms. Hale in danger of being caught in the crossfire. Thus, the court, relying on *Commonwealth v. Reynolds*, 835 A.2d 720 (Pa.Super. 2003) concluded that Appellant's conduct had placed the two in danger of serious bodily injury.

Appellant asserts that this case is distinguishable from *Reynolds*, *supra*. In *Reynolds*, the defendant was charged with REAP following a dispute with two individuals at a tavern. After arguing with the two individuals, Reynolds and his wife were removed from the bar by security. When the two individuals who had argued with Reynolds emerged from the bar a short time later, Reynolds, who was waiting outside, threatened them

- 10 -

with a handgun. A fight ensued wherein Reynolds and the two men wrestled each other to the ground to gain control of the firearm. Eventually, Appellant regained his feet after a bystander interjected. He again brandished his weapon and threatened the two men before fleeing.

On appeal, we found the Commonwealth had presented sufficient evidence to establish REAP. We noted that there was no evidence that Reynold's gun was loaded at the time of the dispute. Notwithstanding that fact, we found that, even had that not been the case, "the circumstances surrounding [Reynold's] actions presented an actual, foreseeable, risk of danger." *Id*. at 729. We observed that Reynolds lashed out in a bar with other customers and staff present, pointed a gun at a person's forehead, and wrestled with the two individuals while possessing a firearm. Finally, we remarked that a bystander had entered the fray in an attempt to dispel the scuffle. As such, we concluded that Reynolds had created an actual danger by pointing the gun at the men, regardless of whether it was loaded or operable.

Appellant argues that the risk of retaliation apparent in **Reynolds** was not present instantly. He asserts that he approached the couple on the street, rather than in a bar full of people, and hence, the supposed danger created by his conduct did not create a reasonably foreseeable risk to Mr. Bellinger and Ms. Hale. We disagree.

Herein, Appellant approached Mr. Bellinger and Ms. Hale at a bus stop on a busy street during the middle of the day. When Mr. Bellinger refused to give Appellant money and his cellphone, Appellant pulled a firearm and placed it six inches away from Mr. Bellinger's head. Mr. Bellinger told Appellant that he would "have to shoot me to get [the items]." N.T. Trial, 4/18/15, at 58. Mr. Bellinger's remarks resulted in a two-minute stand-off during which Appellant continued to aim the weapon at Mr. Bellinger's face. The danger inherent in such a deadlock, in the middle of the day in an urban environment, posed a serious risk of harm to Ms. Hale and Mr. Bellinger. Appellant's actions created an immediate threat of retaliation from any passerby who happened to chance upon the confrontation. The possibility of such retaliation created the risk that Mr. Bellinger or Ms. Hale would suffer serious bodily injury if caught in the crossfire. Therefore, we find that, when viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth presented sufficient evidence to support Appellant's conviction for REAP. Thus, no relief is due.

In his third issue, Appellant alleges that there was insufficient evidence to support his convictions for theft and receiving stolen property as it relates to his altercation with Mr. Bellinger. He contends that since he did not obtain any property from Mr. Bellinger, he cannot be found guilty of theft or receiving stolen property.

In order to be convicted of theft by unlawful taking of movable property, a person must unlawfully take, or exercise unlawful control over, movable property of another with the intent to deprive him thereof. **Commonwealth v. Hill**, 140 A.3d 713 (Pa.Super. 2016); 18 Pa.C.S. § 3921(a). The crime of receiving stolen property requires the Commonwealth to show that the defendant (1) intentionally acquired possession of the movable property of another; (2) with the knowledge or belief that it was probably stolen; and (3) the intent to deprive the individual of that property permanently. **Commonwealth v. Robinson**, 128 A.3d 261, 265 (Pa.Super. 2015); 18 Pa.C.S. § 3295(a).

In its Rule 1925(a) opinion, the trial court did not dispute the merits of Appellant's claimed error. Rather, it stated that Appellant was guilty of attempted theft and attempted receipt of stolen property. The court reasoned that when it realized its error, it decided not to impose any further penalty on those counts. Hence, the court concluded the error was harmless. In a similar vein, the Commonwealth concedes that Appellant did not take possession of Mr. Bellinger's cellphone or money, but nevertheless, requests that this court modify his convictions to reflect the lesser-included offenses of attempted theft and attempt to receive stolen property. Appellant rebuffs these attempt crimes and requests this Court to limit its review to a sufficiency analysis of his conviction for theft and receiving stolen property. As this Court lacks the power to modify sentences or

impose convictions, as the Commonwealth urges us to do, we are bound to proceed under the rubric of a challenge to the sufficiency of the evidence.

We begin our examination by noting that any conviction for a crime that a person has not committed cannot be harmless error, even where no further sentence is imposed.[2]  That said, we find that the evidence was not sufficient to uphold Appellant's convictions for theft and receiving stolen property.  The Commonwealth simply presented no evidence that Appellant took possession of Mr. Bellinger's telephone or money.  Rather, Appellant approached Mr. Bellinger and asked for change.  When Mr. Bellinger denied that request, Appellant drew his gun and demanded money and a cellphone.  However, after a brief stand-off between the two individuals, Appellant fled the scene without taking anything from Mr. Bellinger.  Hence, Appellant is entitled to relief.

In sum, we find, when viewing the evidence in the light most favorable to the Commonwealth as verdict winner, that the evidence was insufficient to support a conviction of unlawful restraint of Ms. Houlihan, sufficient to support a conviction of REAP as to Mr. Bellinger and Ms. Hale, and insufficient to support convictions for theft and receipt of stolen property with regard to Mr. Bellinger.  Accordingly, we reverse Appellant's convictions

_____

[2] A conviction, regardless of the punishment imposed, becomes a part of a person's criminal history, and thus, applies towards his prior record score when calculating sentencing guidelines.  **See** 204 Pa.Code § 303.5.

for unlawful restraint, theft, and receiving stolen property as discussed above. Since Appellant did not receive any further punishment for his convictions for these offenses, the trial court's sentencing scheme is not disturbed. Thus, we need not vacate his sentence. *See Commonwealth v. Thur*, 906 A.2d 552, 570 (Pa.Super. 2006).

Convictions for unlawful restraint, theft, and receipt of stolen property reversed. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/4/2017

- 15 -